*Burlington Educ. Associates v. Future Planning Associates*, 683-12-18 Wncv (Teachout, J., June 5, 2019)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                           **CIVIL DIVISION**
**Washington Unit**                                          **Docket No.  683-12-18 Wncv**

**BURLINGTON EDUCATION ASSOCIATION, et al.**
    **Plaintiffs**

    **v.**

**FUTURE PLANNING ASSOCIATES, INC.**
    **Defendant**

### DECISION
### Future Planning's Motion to Dismiss

Plaintiffs in this case consist of 30 specifically named local labor unions representing Vermont school employees affiliated with the National Education Association and the Vermont–National Education Association.[1]  None of the member–employees are parties.  Plaintiffs claim that the school districts in which their members work contracted with Defendant Future Planning Associates, Inc., to administer their health insurance plans beginning on January 1, 2018.  Plaintiffs claim that Future Planning administered those plans incompetently, causing financial and emotional harm to many of its members.  Plaintiffs claim breach of contract and breach of the covenant of good faith and fair dealing against Future Planning, describing their members as intended third party beneficiaries of the contracts between the relevant school districts and Future Planning.  Plaintiffs also claim that Future Planning's conduct violated Vermont's Consumer Protection Act, 9 V.S.A. §§ 2451–2481x, and they seek punitive damages.

Future Planning has filed a motion to dismiss.  It argues that Plaintiffs—the many local labor unions—lack constitutional standing to represent the interests of their members in this litigation.  Future Planning relies on the three-part test for organizational, or associational, standing as described in *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 343 (1977).  See *Parker v. Town of Milton*, 169 Vt. 74, 78 (1998) (adopting *Hunt* in Vermont).  Plaintiffs object to dismissal, arguing that the prong of the test that Future Planning relies on, the necessity for individual participation of the members, is *prudential* rather than *constitutional*, and therefore the court has discretion over whether standing exists in this case.  See *United Food and Commercial Workers Union Local 751 v. Brown Group., Inc.*, 517 U.S. 544, 556–57 (1996) (explaining that the third part of the *Hunt* test is prudential rather than constitutional).

Future Planning's motion is denied, but not because Plaintiffs have "standing."  Rather, standing, in the constitutional sense, is inapplicable to this case.

"Standing doctrines are employed to refuse to determine the merits of a legal claim, on the ground that even though the claim may be correct the litigant advancing it is not properly

---

[1] Plaintiffs also purportedly include "other similarly situated local unions," implying that Plaintiffs may seek to certify a larger class of as yet unidentified plaintiff–unions for purposes of a class action.  See V.R.C.P. 27.

situated to be entitled to its judicial determination." 13A Wright & Miller et al., Federal Practice & Procedure: Jurisdiction 3d § 3531 (footnote omitted). As the Vermont Supreme Court has explained:

> The doctrine of standing is "'an essential and unchanging part of the case-or-controversy requirement of Article III [of the U.S. Constitution].'" . . . . One of the "passive virtues" of the standing doctrine is to promote judicial restraint by limiting the occasions for judicial intervention *into the political process. Standing doctrine is fundamentally rooted in respect for the separation of powers of the independent branches of government.*

*Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 340–41 (1997) (citations omitted; emphasis added). True standing, in the constitutional sense, is a necessary component of the court's subject matter jurisdiction. *Brigham v. State*, 2005 VT 105, ¶ 9, 179 Vt. 525. Standing applies in "litigation asserting the illegality of governmental action," not "[c]laims of private wrongdoing." 13A Wright & Miller et al., Federal Practice & Procedure: Jurisdiction 3d § 3531. Claims of private wrongdoing generally do not present separation of powers issues that reflect on subject matter jurisdiction.

Courts and lawyers both *frequently* refer improperly to standing rather than the legal doctrines that more appropriately apply in the context of claims of private wrongdoing. Wright & Miller discusses this issue and some of the risks it presents as follows.

> One last set of cautions is in order. The fascination of complex standing doctrine and the concern to observe constitutional limits on the judicial power occasionally lead courts to invoke public-law concepts to resolve concerns that are better addressed through private-law concepts. In part, these decisions reflect a longstanding common-law practice. It may be useful to avoid decision whether a defendant has violated someone's rights by ruling that in any event the present plaintiff is not entitled to a remedy. That approach may be expressed by concluding that the plaintiff lacks standing. The difficulty arises when these questions of private right are considered through the distinctive public-law doctrines of standing. It would be better to rely directly on cause-of-action, real-party-in-interest, capacity, intervention, and like concepts. . . .

> The question whether the law recognizes the cause of action stated by a plaintiff is frequently transformed into inappropriate standing terms. The Supreme Court has stated succinctly that the cause-of-action question is not a question of standing. . . .

. . .

> These conceptual confusions make unnecessary work. Ordinarily little other harm is done, apart from generating potentially confusing precedent on what are represented as standing issues. But conceptual labels may carry real consequences. Lack of "standing" to raise a federal claim may persuade a court

that it lacks subject-matter jurisdiction and cannot exercise supplemental jurisdiction. A decision characterized in standing terms may not carry the claim-preclusion consequences that should flow from what in fact is a dismissal for failure to state a claim.

.   .   .

Confusions of standing with real-party-in-interest doctrine occur with some frequency. The most frequent cases assume that a right has been violated and ask whether a particular plaintiff is the right plaintiff by invoking standing theory. . . .

The confusion of standing with real-party-in-interest concepts may have unfortunate consequences. A focus on standing may lead a court to refuse application of the ameliorating rules that enable substitution of the real party in interest when the wrong plaintiff filed the action.

13A Wright & Miller et al., Federal Practice & Procedure: Jurisdiction 3d § 3531 (footnote omitted).

This case is private litigation between local labor unions and a contractor hired to provide certain health plan services affecting members of those local labor unions. Future Planning, in essence, argues that Plaintiff unions are not the real parties in interest, that individual members who claim to have been harmed are the real parties in interest. See V.R.C.P. 17 (real party in interest); 13A Wright & Miller et al., Federal Practice & Procedure: Civil 3d § 1352 (explaining that under Rule 17, generally "an association is not the appropriate party for bringing suit to assert the personal rights of its members."). However, because Future Planning framed the real party in interest issue as one of standing, the parties briefed the nuances of associational standing and not the nuances of the real party in interest doctrine, including whether any real party in interest defect applies to all claims and, if there is a defect, whether the real parties in interest will seek intervention or substitution. On balance, rather than try to address the issue as briefed and hope it does no harm, the court concludes that Future Planning's motion instead is better simply denied.

## ORDER

For the foregoing reasons, Future Planning's motion to dismiss is *denied*.

Dated at Montpelier, Vermont this _____ day of June 2019.

_____
Mary Miles Teachout
Superior Judge